IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 7:15-CR 00103 |
| ) | |
| ) | |
| ELISEO JIMENEZ HERNANDEZ ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Eliseo Hernandez is before the court having pleaded guilty to unlawfully reentering the United States after having been removed, in violation of 8 USC Section 1326(a). The maximum penalty for this offense is imprisonment for 10 years; there is no mandatory minimum penalty. The sentencing guidelines range is 10 to 16 months (Presentence Report (PSR) at para. 37). Mr. Hernandez submits this memorandum in support of his request that the court adjudge a sentence of imprisonment for time served—approximately 4.5 months.

**Background and Offense Conduct**

Eliseo Hernandez, a citizen of Mexico, is 30 years old. He has two children by Belinda Ramos with whom he resides in Roanoke. Both children (ages 4 and 7) are U.S. citizens.

Mr. Hernandez grew up in Mexico where he faced many challenges. One of ten children (he was the fifth born), Eliseo grew up in a "casita" (little house)—six rooms, in a small rural village near Vera Cruz, Mexico. Eliseo attended school until the ninth grade

when he had to drop out so he could work full time and help provide for his family. Eliseo actually began working (in the cornfields and harvesting wood for cooking) when he was eight years old. He would go to school until noon, come home, eat, and then work until dinner. He reports that his siblings had similar childhoods; all pitched in to help support the family.

Eliseo first came to the United States in 2004, at age 17. He did so with the help of a "coyote" who chaperoned Eliseo and others across the border. His agreement with the coyote was that he would pay the coyote $3,000.00 out of his earnings in the United States. Eliseo came to the United States for the same reason that many come to this Country from Latin America--to find work and escape the bare survival situation he faced in his native Country. In the United States, Eliseo has always worked—in the construction trades, operating heavy equipment, and doing landscaping. He and his children's mother (who works at McDonalds) fully support their children (who are both U.S. citizens), and Eliseo sends money to his family in Mexico when he can. Eliseo was working in construction when he was arrested.

As the PSR notes, Mr. Hernandez has been removed from the United States twice—in 2009 and 2012.

Mr. Hernandez's present offense stems from his being found in the United States again—this time while incarcerated in Roanoke, Virginia following his arrest in March 2015 and conviction for felony driving while intoxicated. He was sentenced to an active term of incarceration of one year which he completed on January 8, 2016 (PSR at para.

23). Mr. Hernandez, of course, is not proud of this record nor of his history of returning to the United States without permission. His explanation: he returned to the United States to work and provide for his two children. Both suffer from asthma, and medical care in his village in Mexico is virtually non-existent. He cares for his children and feels morally obligated to support them and be with them. He realizes, though, that he cannot live here illegally, that he cannot support his family while incarcerated, and that he must remain in Mexico unless and until he has permission to reenter the United States.

**Sentencing Standard**

The starting point in federal sentencing is a properly calculated sentencing guidelines range, as the sentencing guidelines establish the "initial benchmark" in determining an appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The guidelines, however, are not the ending point in federal sentencing. Following United States v. Booker, 543 U.S. 220 (2005), the guidelines are advisory. District Courts "may not presume that the Guidelines range is reasonable" (Gall v. United States, 552 U.S. 38, 50 (2007)) but should consider the guidelines as one factor in arriving at a fair sentence. A sentencing court may vary from the guidelines based on a categorical disagreement with a particular guideline that does not properly reflect the 18 USC Section 3553(a) sentencing factors, or it may vary because given the individual characteristics of a particular case, the guidelines recommend an excessive sentence. *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Tomko,* 562 F. 3d 571 (3rd Cir. 2009)(en banc).

A sentencing court must make an independent determination of an appropriate sentence

based on all of the 18 U.S.C. Section 3553(a) factors without any "thumb on the scale favoring a guideline sentence" United States v. Sachsenmaier, 491 F. 3d 680, 685 (7th Cir. 2007) and keeping in mind that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

The primary mandate of 18 U.S.C. § 3553(a) is that the District Court impose a sentence "sufficient, *but not greater than necessary*, to comply with the purposes" of punishment as set forth in subdivision (a)(2) of the statute. *Id.* (emphasis added). The four purposes identified are: retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), deterrence, incapacitation ("to protect the public from further crimes of the defendant"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). In determining a sentence that is sufficient, but not greater than necessary, the Court is directed to consider several factors: the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the advisory sentencing guidelines range, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution. *Id.*

**Calculation Under The Advisory Guidelines**

Mr. Hernandez's base offense level under the sentencing guidelines is 8 (PSR at para. 9). Because he has a felony conviction for driving under the influence, four points are added resulting in an adjusted offense level of 12 (PSR at para. 14). Factoring in acceptance of responsibility credit, Mr. Hernandez's total offense level is 10 which, combined with a criminal history category III (PSR at para. 24), results in a guidelines range of 10 to 16 months. If, however, this district had a "fast track" program in place, Mr. Hernandez's total offense level would be 8 (a deduction of 4 points from the adjusted offense level for pleading guilty, for agreeing to expedited disposition, and for waiving any argument for a downward variance), and his resulting guidelines range would be 6 to 12 months. See "Illegal Reentry Offenses," United States Sentencing Commission, April 2015 at p.7, describing the "fast track"program:http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/immigration/2015_Illegal-Reentry-Report.pdf (hereinafter Illegal Reentry Report).

**Section 3553(a) Factors**

**1. Nature and Circumstances of the Offense**

The facts are summarized in the PSR (at para. 3 thru 4). Mr. Hernandez left his Country of birth to find a better way of life in the United States. He has worked consistently while in the United States and eventually fathered two children who are U.S. citizens. He has supported them emotionally and financially.

To be sure, Mr. Hernandez entered this Country illegally and returned without permission. He did so, however, because he wanted to be with his family to support them and provide for them. He vows to stay in Mexico until, if ever, he has permission to reenter the United States. He wants the Court to know that his illegal reentries stemmed not from his disdain for the laws of the United States but from his desire to work and his natural desire to be with his family—to provide for them and support them.

**2. Characteristics of the Defendant**

Eliseo Hernandez is 30 years old. He has two children and has resided with the mother of his children for almost 10 years. Eliseo has worked hard virtually his whole life. At a time when most are attending school, having fun with their friends, playing sports and preparing for the far off responsibilities of adulthood, Eliseo was helping support his family. From the earliest age, Eliseo has known little besides hard, honest work—working in the fields beginning at age 8. As an adult, he has worked in construction, landscaping and heavy equipment operation. He reports having skills operating bulldozers, backhoes, bobcats and cranes and hopes that these skills will be of value when he returns to Mexico. His convictions stem from his excessive use of alcohol. He reports that none involved accidents or injuries; that he simply drank too much, thought he was sufficiently sober to drive home on each occasion and each time he was wrong (PSR at para. 19 thru 23).

**3. Kinds of Sentence Available and Guidelines Recommendation**

The maximum punishment for Mr. Hernandez's offense is 10 years. There is no mandatory minimum sentence. The guidelines range, as noted, is 10 to 16 months.

### Avoiding Unwarranted Sentence Disparity

One of the factors the sentencing court must consider is the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 USC Section 3553(a)(6). The provision seeks uniformity in a broad sense but not at the expense of an individualized sentence based on the circumstances of the offense and the background of the defendant.

In this case, the guidelines call for a sentence ranging from 10 to 16 months. As documented by the United States Sentencing Commission, sentencing courts adjudge sentences within or below the guidelines range in the vast majority of illegal reentry cases. Analyzing data from fiscal year 2013, the Commission noted the following about defendants sentenced for illegal reentry offenses: 1. Overall, 28.9% of these defendants benefited from the early disposition ("fast track") program resulting in an average sentence reduction of 39.9 per cent (Illegal Reentry Report at p. 7-8 and Figure 5); 2. Another 12.84% were sentenced below the guidelines range without the benefit of a substantial assistance motion. *Id.* at p. 10 and Figure 5; and 3. Defendants in Mr. Hernandez's situation (4-point enhancement for a prior felony) received the benefit of the early disposition program 37.8 per cent of the time and were sentenced below the guidelines range without the benefit of a substantial assistance motion another 7.7 per cent of the time. *Id.* at p.11, Table 2. The report notes as well that on average persons sentenced for illegal reentry were deported 3.2 times before the sentencing event at issue (*id.* at p. 14); on average had 3.7 sentencing events before the sentencing event at issue (*id.* at p. 17);

and the most common offense of conviction was driving under the influence (*id.* at p.17).

### Purposes of Sentencing Under 18 U.S.C. § 3553(a)(2)

Congress has recognized four purposes of sentencing, often summarized as retribution, general deterrence, specific deterrence/incapacitation, and rehabilitation. 18 U.S.C. Section 3553(a)(2). Mr. Hernandez submits that a sentence of imprisonment for time served is a fair and reasonable sentence. Such a sentence takes into account the seriousness of this offense but also gives due consideration to the sentences imposed for similarly situated defendants, the history and characteristics of this defendant, and his reasons for returning to the United States.

### Conclusion

Mr. Hernandez asks the court to impose a sentence of imprisonment for time served—a period sufficient but not greater than necessary to serve the statutory factors listed in 18 USC Section 3553(a).

Respectfully Submitted,

Eliseo Jimenez Hernandez
By Counsel

s/Randy V. Cargill
Assistant Federal Public Defender
Office of the Federal Public Defender
    for the Western District of Virginia
210 1st Street, Suite 400
Roanoke, VA 24011
(540) 777-0880

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the foregoing document was electronically filed with the Clerk of Court and will be forwarded using the CM/ECF system to Assistant United States Attorney Patrick Hogeboom counsel for the United States this 11th day of May, 2016.

        s/Randy Cargill